IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:25-cv-499-DWD |
| | ) | |
| LARRY G. LOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Plaintiff's Motion for the Entry of a Final Default Judgment. (Doc. 8). For the reasons explained below, the Court **GRANTS** Plaintiff's Motion.

## I. BACKGROUND

On April 2, 2025, Plaintiff filed a Complaint for a permanent injunction and other equitable relief under 18 U.S.C. § 1345 due to the "ongoing commission of criminal mail fraud in violation of 18 U.S.C. § 1341." (Doc. 1, pgs. 1, 5). Plaintiff seeks to "prevent [the] continuing and substantial injury to the victims of fraud." (Doc. 1, pgs. 1, 5).

When describing the "criminal mail fraud" at issue, Plaintiff alleges, "[b]eginning in October 2022 or earlier and continuing to the present, Defendant has engaged in the advertisement and sale of counterfeit United States Postal Service ('USPS') First-Class Mail Forever stamps." (Doc. 1, pgs. 1-2). Defendant allegedly purchased customer address lists from marketing websites, then sent order forms to those prospective customers in various states through the USPS. (Doc. 1, pg. 1). The order forms allegedly advertised First-Class Mail Forever stamps for $0.25 each plus $5.00 shipping." (Doc. 1,

pgs. 1-2). Defendant allegedly shipped counterfeit First-Class Mail Forever stamps to the customers who returned the order form and the advertised payment. (Doc. 1, pg. 1).

On November 3, 2022, an Inspector with the USPS Inspection Service, while "using a fictional name and address, transmitted by USPS mail a completed order form to Defendant and enclosed a $30.00 Postal Money Order." (Doc. 1, pg. 2). Eleven days later, on November 14, 2022, the Inspector allegedly "retrieved from a post office box in Missouri an envelope bearing a return address of Larry Lowe." (Doc. 1, pg. 3). In the envelope were "[a] roll of 100 stamps…along with another stamp order form, a flyer advertising a work from home opportunity, and a flyer selling a system for winning at casinos." (Doc. 1, pg. 3). A field test of the First-Class Mail Forever stamps, received by the Inspector, allegedly demonstrated the stamps were counterfeit. (Doc. 1, pg. 3).

On January 4, 2023, USPS Inspection Service agents allegedly visited Defendant to advise him of the counterfeit nature of the First-Class Mail Forever stamps. (Doc. 1, pgs. 2-3). In an interview with the agents on that date, Defendant allegedly indicated:

    a.    He sells stamps to individuals nationwide and has been doing so for approximately six months;

    b.    He did not know that the stamps were counterfeit;

    c.    He purchases the stamps from a website and advertises them through flyers mailed to potential customers on mailing lists he has purchased on the internet;

    d.    He works for himself and not at the direction of anyone else;

    e.    Individuals purchase the stamps from him with cash or money orders and he keeps the money for himself, or uses it for his business; and

    f.      He has approximately 23 rolls of 100 stamps each on hand.

(Doc. 1, pg. 3).

After the interview, Defendant allegedly "signed a voluntary discontinuance document in which he acknowledged that it is illegal to use, sell, possess, or manufacture counterfeit stamps and agreed to cease his use and sale of counterfeit or invalid postage." (Doc. 1, pgs. 3-4). Despite the agents' warning to stop selling the fake First-Class Mail Forever stamps, Defendant allegedly persisted in the fraudulent scheme by knowingly continuing to sell the stamps though the USPS. (Doc. 1, pgs. 2-4).

On June 24, 2024, the Inspector with the USPS Inspection Service, while "using a fictional name and address, [again] transmitted by USPS mail a completed order form to Defendant and enclosed a $65.00 Postal Money Order." (Doc. 1, pg. 4). On July 3, 2024, the Inspector allegedly "retrieved from a post office box in Missouri an envelope bearing a return address of Larry Lowe." (Doc. 1, pg. 4). In the envelope were "[t]wo rolls of 100 stamps each…along with another stamp order form, a flyer advertising how to make $50, and a flyer on how to get free stamps." (Doc. 1, pg. 4). The stamps were again found to be counterfeit. (Doc. 1, pg. 4). Plaintiff "requests [the] entry of a permanent injunction barring Defendant from engaging, participating, or assisting in the advertisement or sale of counterfeit United States Postal Service postage stamps." (Doc. 1, pg. 5).

Despite service, Defendant did not answer or respond to Plaintiff's Complaint. (Doc. 5). Therefore, on May 8, 2025, Plaintiff filed a Request to the Clerk of the Court for the Entry of a Default under Federal Rule of Civil Procedure 55(a). (Doc. 6). The next day, on May 9, 2025, the Clerk of the Court entered a Default under Rule 55(a). (Doc. 7).

On June 18, 2025, Plaintiff filed its Motion for the Entry of a Final Default Judgment under Rule 55(b). (Doc. 8). Plaintiff supported that Motion with the Declaration of USPS Inspector Kevin Gorham, which was submitted under the penalty of perjury "based on information [that was] provided…during the course of [his] investigation from participants in the criminal activity, from other witnesses, and from other law enforcement agents." (Doc. 8-1). Plaintiff "seeks [a] default judgment finding Defendant liable on Count I of the Complaint" and "the entry of a permanent injunction barring Defendant from continuing to engage in his fraudulent scheme." (Doc. 8, pg. 1).

## II. ANALYSIS

Now, other than in cases where a default judgment may be entered by the Clerk of the Court, the proponent of a default judgment must apply to the Court, as Plaintiff has done here. *See* Fed. R. Civ. P. 55(b). Plaintiff is required to establish: (1) a default was entered against Defendant; (2) the default was entered on Plaintiff's Complaint; (3) Defendant is not an infant or incompetent person; (4) Defendant is not subject to statutory protections by virtue of active military service; and (5) any required notice was served on Defendant as the defaulting party. *See UMG Recordings, Inc. v. Stewart,* 461 F. Supp. 2d 837, 841 (S.D. Ill. 2006) (citing *Elektra Ent. Grp Inc. v. Crawford,* 226 F.R.D. 388, 392 (C.D. Cal. 2005)); *accord Anderson v. Specified Credit Ass'n, Inc.*, No. 11-cv-53, 2011 WL 2414867, *2 (S.D. Ill. June 10, 2011); *Regions Bank v. R & D Dev. Corp.*, No. 10-cv-759, 2011 WL 4387139, *2 (S.D. Ill. Sept. 20, 2011). The Court may also consider the amount of money at issue, whether the default was largely technical, whether the grounds for default were clearly established, and whether the default was from a good faith mistake

or excusable neglect. *Anderson*, 2011 WL 2414867 at *2 (citing 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Fed. Prac. & Proc. § 2685 (3d ed. 1998 & Supp. 2010) (collecting cases)); *accord Regions Bank*, 2011 WL 4387139 at *2.

The entry of a default judgment would establish, as a matter of law, Defendant is liable under the Complaint. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (quoting *e360 Insight v. Spamhaus Project,* 500 F.3d 594, 605 (7th Cir. 2007)); *accord Anderson*, 2011 WL 2414867 at *3; *Regions Bank*, 2011 WL 4387139 at *3. Indeed, after the Clerk of the Court's entry of a Default, Plaintiff's well-pled allegations as to Defendant's liability are taken as true. *See Wehrs*, 688 F.3d at 892; *accord Anderson*, 2011 WL 2414867 at *3; *Regions Bank*, 2011 WL 4387139 at *3. Whether to enter a default judgment, however, is a decision that is left to the sound discretion of the Court. *See Anderson*, 2011 WL 2414867 at *3 (citing *Swaim v. Moltan Co.,* 73 F.3d 711, 716 (7th Cir. 1996); *Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 252 (7th Cir. 1990)); *accord Regions Bank*, 2011 WL 4387139 at *3.

Here, the record reflects the Clerk of the Court entered a Default on Plaintiff's Complaint due to Defendant's failure to plead or otherwise defend against this lawsuit. *See UMG Recordings, Inc.*, 461 F. Supp. 2d at 841; *Anderson*, 2011 WL 2414867 at *2; *Regions Bank*, 2011 WL 4387139 at *2; (Docs. 6; 6-1; 7; 8, pgs. 2-3). Futher, there is no indication in the record that Defendant is an infant, is incompetent, or is in active military service. *See UMG Recordings, Inc.*, 461 F. Supp. 2d at 841; *Anderson*, 2011 WL 2414867 at *2; *Regions Bank*, 2011 WL 4387139 at *2. Since Defendant failed to plead or otherwise defend against the Complaint, notice was not required under Rule 55(b)(2). *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by

a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."); *UMG Recordings, Inc.,* 461 F. Supp. 2d at 841; *Anderson*, 2011 WL 2414867 at *2; *Regions Bank*, 2011 WL 4387139 at *2. Finally, while it is not required to consider such factors, the Court also notes injunctive relief but not damages are at issue, the Default was not "largely technical," the basis for the Default was "clearly established," and the Default was not from a good faith mistake or excusable neglect. *See Anderson*, 2011 WL 2414867 at *2; *Regions Bank*, 2011 WL 4387139 at *2.

For these reasons, the Court **FINDS** the requirements for a default judgment under Rule 55(b)(2) have been satisfied by Plaintiff. *See* Fed. R. Civ. P. 55(b)(2); *Regions Bank*, 2011 WL 4387139 at *2; *see also UMG Recordings, Inc.,* 461 F. Supp. 2d at 841-42 (concluding the plaintiffs fully complied with the procedure for obtaining a default judgment under Rule 55(b)(2), where a default was previously entered against the defendant, the plaintiffs attached the pleading on which the default was entered, the plaintiffs had no reason to believe the defendant was an infant or an incompetent or was in active military service, and notice to the defendant was not required because he never entered an appearance in the case); *Anderson*, 2011 WL 2414867 at *3 (taking as true the plaintiff's allegations as to the defendant's liability, and entering a default judgment in the plaintiff's favor under Rule 55(b)(2), where a default was previously entered against the defendant, the plaintiff identified the pleading on which the default was entered (*i.e.*, the complaint), the defendant was not an infant or an incompetent and he was not in active military service, notice to the defendant was not required because it never entered an appearance in the action, the amount of money at issue was rather small, the clerk of the court's default was

proper on the "clearly established" basis that the defendant failed to answer or otherwise respond to the complaint within 21 days of service, and there was no indication that the default was caused by a good faith mistake or excusable neglect). Therefore, in its sound discretion, the Court **GRANTS** Plaintiff's request for a default judgment against Defendant. *See Anderson*, 2011 WL 2414867 at *3; *accord Regions Bank*, 2011 WL 4387139 at *3. Further, accepting Plaintiff's allegations as to Defendant's liability as true, the Court **FURTHER FINDS**, as a matter of law, he is liable under the Complaint. *See Wehrs*, 688 F.3d at 892; *Anderson*, 2011 WL 2414867 at *3; *Regions Bank*, 2011 WL 4387139 at *3.

Next, on the relationship between default judgments and permanent injunctions, the Seventh Circuit has found: "[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate. This principle applies with equal if not greater force in the context of equitable relief, for which the law imposes a requirement that the party seeking the injunction demonstrate the inadequacy of legal relief." *e360 Insight,* 500 F.3d at 604 (parenthetical citations omitted). The Seventh Circuit, when presented with a district court conclusion that the plaintiff's success by default, and the failure of the defendant to interpose objections to relief, entitled the plaintiff to a permanent injunction, found "a more substantial inquiry by the district court was necessary prior to the entry of equitable relief." *Id.* (citing *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006); Fed. R. Civ. P. 65(d) ("Every order granting an injunction…must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.")). Absent a statement that explained

7

the necessity of permanent injunctive relief, the Seventh Circuit was "hampered" in its review of the district court's exercise of equitable powers. *Id.* (citing *U.S. v. Jordan,* 485 F.3d 982, 985 (7th Cir. 2007); *U.S. v. Cunningham,* 429 F.3d 673, 679 (7th Cir. 2005)).

Therefore, while permanent injunctions are commonly issued with default judgments, a plaintiff generally must satisfy the traditional requirements for a permanent injunction. *See U.S. v. Olson*, 98 F.4th 840, 842 (7th Cir. 2024) (quoting *eBay Inc.,* 547 U.S. at 391; citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Nat'l Collegiate Athletic Assoc. v. Kizzang LLC*, 304 F. Supp. 3d 800, 809 (N.D. Ill. 2018) (quoting *Virgin Recs. Am., Inc. v. Johnson*, 441 F.Supp.2d 963, 965 (N.D. Ind. 2006)). However, that is not the case here. "Actions for statutory injunctions need not meet th[ose] requirements" because, "[o]nce a violation is demonstrated, the moving party need show only that there is some reasonable likelihood of future violations." *Commodity Futures Trading Comm'n v. Hunt,* 591 F.2d 1211, 1220 (7th Cir. 1979); *accord Wisconsin v. Stockbridge-Munsee Cmty.*, 67 F. Supp. 2d 990, 994 (E.D. Wisc. 1999); *see also S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982) (according with these principles and further stating: "In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violation, including such factors as the gravity of harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations"); *Illinois Bell Telephone Co. v. Illinois Com. Comm'n*, 740 F.2d 566,

571 (7th Cir. 1984) (stating, "where the plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, it need not show irreparable harm"); *Bedrossian v. Nw. Mem'l. Hosp.*, 409 F.3d 840, 843 n. 1 (7th Cir. 2005) ("*Illinois Bell* and cases like it show that 'if a statute confers a *right* to an injunction once a certain showing is made, no plaintiff…need show more than the statute specifies.' ") (Emphasis in original); *U.S. v. Sriram*, 147 F. Supp. 2d 914, 935-36 (N.D. Ill. 2001) (stating as follows in a case arising under §§ 1341 and 1345: "The Government argues that where, as here, an injunction is sought pursuant to a federal statute enacted to protect the public interest, no proof of irreparable harm, inadequacy of other remedies, or balancing of interest is required because 'passage of the statute is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained.' The weight of authority supports the Government's position.") (cleaned up); *U.S. v. Fang*, 937 F. Supp. 1186, 1199 (D. Md. 1996) (finding, in a case arising under §§ 1341 and 1345, "when a criminal statute provides for injunctive relief, once the illegal activity is demonstrated, irreparable harm is presumed; there is no need to demonstrate the inadequacy of a remedy at law"); *U.S. v. Cappetto*, 502 F.2d 1351, 1358-59 (7th Cir. 1974) ("It was plainly the intention of Congress in adopting [the civil remedies provision of the RICO statute] to provide for injunctive relief against violations of [the prohibited activities provision of the RICO statute] without any requirement of a showing of irreparable injury other than that injury to the public which Congress found to be inherent in the conduct made unlawful by [that provision]. It is also obvious that Congress did not intend to require a showing of inadequacy of the remedy at law.").

9

Here, the substantive provision alleged in the Complaint, § 1341, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341; *see also U.S. v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993) ("In order to sustain a mail fraud conviction under 18 U.S.C. § 1341, the government must adduce sufficient evidence as to three elements: (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme."); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015) (repeating these elements for a § 1341 claim); *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (repeating these elements for a § 1341 claim and adding, "[a] necessary element of a scheme to defraud is the making of a false statement or material misrepresentation, or the concealment of a material fact").

And, importantly, Plaintiff is permitted by § 1345(a)(1) to seek a permanent injunction for § 1341 violations. That provision states: "If a person is…violating or about to violate this chapter…the Attorney General may commence a civil action in any Federal court to enjoin such violation." 18 U.S.C. § 1345(a)(1).[1] Under § 1345(a)(3), "[a] permanent or temporary injunction or restraining order shall be granted without bond." *Id.* § 1345(a)(3). Finally, § 1345(b) states: "The court shall proceed as soon as practicable to the…determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." *Id.* § 1345(b).

In this case, the record reflects Defendant, between around October 2022 and the present date, advertised and sold counterfeit USPS First-Class Mail Forever stamps through the mail. (Docs. 1, pgs. 1-2; 8, pgs. 1-2; 8-1, pg. 1). On two occasions, Defendant completed the sale of those counterfeit stamps to an Inspector of the USPS, who was acting under a fictional name and address. (Docs. 1, pgs. 2-4; 8-1, pgs. 1-2). After the Inspector's receipt of the stamps from Defendant on each of those occasions, they were tested and confirmed to be counterfeit. (Docs. 1, pgs. 3-4; 8-1, pgs. 1, 3). After the first incident, USPS Inspection Service agents visited Defendant, at which time they advised him of the counterfeit nature of the First-Class Mail Forever stamps. (Docs. 1, pgs. 2-3; 8,

---

[1] Defendant has not been indicted for the allegations in this action. (Doc. 8, pg. 3). Thus, the Federal Rules of Civil Procedure apply to these proceedings under § 1345. *See* 18 U.S.C. § 1345(b) ("A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.").

pg. 2; 8-1, pgs. 1-2). Defendant then made various representations to the agents, including that: he sold the counterfeit stamps nationwide for around six months; he did not know the stamps were counterfeit; he bought the counterfeit stamps from a website; he purchased mailing lists on the internet and then advertised the counterfeit stamps with flyers that were mailed to the potential customers on the mailing lists; he worked for himself and not at the direction of anyone else; individuals bought the counterfeit stamps with cash or money orders; he kept the money for himself or for the use in his business; he possessed approximately 23 rolls of 100 stamps at the time. (Docs. 1, pg. 3; 8-1, pgs. 1-2). Defendant "signed a voluntary discontinuance document in which he acknowledged that it is illegal to use, sell, possess, or manufacture counterfeit stamps. (Docs. 1, pgs. 3-4; 8-1, pg. 2). Defendant also agreed to cease the use and sale of counterfeit or invalid stamps. (Docs. 1, pg. 4; 8-1, pg. 2). Despite the agents' visit and Defendant's signing of the "voluntary discontinuance document," Defendant persisted in the above-described conduct, as reflected by the second incident with the USPS Inspector. (Docs. 1, pgs. 2-4; 8, pg. 2; 8-1, pgs. 2-3). On this record, the Court **FINDS** Plaintiff has shown Defendant violated § 1341, Defendant is reasonably likely to commit future violations of that statute, and a permanent injunction is necessary to prevent a continuing and substantial injury to the United States and to other persons. *See* 18 U.S.C. § 1345(a)(1), (b); *Hunt,* 591 F.2d at 1220; *Holschuh*, 694 F.2d at 144; *Walker*, 9 F.3d at 1249; *Bible*, 799 F.3d at 657; *Williams*, 351 F.3d at 299; *Stockbridge-Munsee Cmty.*, 67 F. Supp. 2d at 994. Based on these findings, the Court **GRANTS** Plaintiff's request for a permanent injunction against Defendant.

### III. CONCLUSION

For the reasons explained above, the Court **FINDS** the requirements for a default judgment under Rule 55(b)(2) have been satisfied by Plaintiff. As such, the Court **GRANTS** Plaintiff's request for a default judgment against Defendant. By virtue of this ruling, the Court **FURTHER FINDS**, as a matter of law, Defendant is liable under the Complaint. The Court **FURTHER FINDS** Plaintiff has shown Defendant violated § 1341, Defendant is reasonably likely to commit future violations of that statute, and a permanent injunction is necessary to prevent a continuing and substantial injury to the United States and to other persons. As such, the Court **GRANTS** Plaintiff's request for a permanent injunction against Defendant. Defendant is **ENJOINED** as follows: Defendant and his officers, directors, employees, agents, subsidiaries, and distributors, and any other person acting in concert or in participation with Defendant, are permanently enjoined from advertising, marketing, promoting, selling, or offering to sell counterfeit postage stamps. *See* Fed. R. Civ. P. 65(d)(1). The Clerk of the Court is **DIRECTED** to enter a Default Judgment and Permanent Injunction against Defendant. Consistent with these rulings, the Court **GRANTS** Plaintiff's Motion for the Entry of a Final Default Judgment.

**SO ORDERED.**

Dated: July 24, 2025

Judge Dugan

Digitally signed by Judge Dugan
Date: 2025.07.24 09:29:18 -05'00'

_____
DAVID W. DUGAN
United States District Judge